People v Robinson (2021 NY Slip Op 07013)





People v Robinson


2021 NY Slip Op 07013


Decided on December 15, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 15, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
SYLVIA O. HINDS-RADIX
BETSY BARROS
LARA J. GENOVESI, JJ.


2014-06456
 (Ind. No. 260/12)

[*1]The People of the State of New York, respondent,
v
Levy Robinson, appellant.


Steven A. Feldman, Manhasset, NY (Arza Feldman of counsel), for appellant.
Joyce A. Smith, Acting District Attorney, Mineola, NY (Cristin N. Connell and Madeline Collins of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (David P. Sullivan, J.), rendered June 17, 2014, convicting him of robbery in the first degree (four counts), robbery in the second degree (two counts), burglary in the first degree (three counts), assault in the second degree, criminal possession of a weapon in the second degree (four counts), resisting arrest, unlawful imprisonment in the second degree (six counts), and endangering the welfare of a child (four counts), upon a jury verdict, and sentencing him, as a second felony offender, to determinate terms of imprisonment of 25 years, plus 5 years of postrelease supervision, on each conviction of robbery in the first degree and burglary in the first degree; determinate terms of imprisonment of 15 years, plus 5 years of postrelease supervision, on each conviction of robbery in the second degree and criminal possession of a weapon in the second degree; a determinate term of imprisonment of 7 years, plus 5 years of postrelease supervision, on the conviction of assault in the second degree; and definite terms of imprisonment of 1 year on each conviction of resisting arrest, unlawful imprisonment in the second degree, and endangering the welfare of a child, with the sentences imposed on the convictions of criminal possession of a weapon in the second degree under counts 13 and 14 of the indictment to run consecutively to each other and to the sentences imposed on the conviction of robbery in the first degree under count 1 of the indictment, and all sentences to otherwise run concurrently with each other.
ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, by providing that the sentence imposed on the conviction of assault in the second degree under count 10 of the indictment shall run consecutively to the sentence imposed on the conviction of burglary in the first degree under count 7 of the indictment, and that all sentences shall otherwise run concurrently with each other; as so modified, the judgment is affirmed.
The defendant was arrested in connection with his participation in a home invasion. When police officers arrived at the scene, they apprehended the defendant inside the home and recovered a large sum of money and jewelry belonging to the victims from the defendant's pants pocket. At trial, the defendant testified that he participated in the home invasion only because the other participant in the home invasion threatened to kill him. However, the jury rejected the affirmative defense of duress, and found the defendant guilty of four counts of robbery in the first [*2]degree, two counts of robbery in the second degree, three counts of burglary in the first degree, assault in the second degree, four counts of criminal possession of a weapon in the second degree, resisting arrest, six counts of unlawful imprisonment in the second degree, and four counts of endangering the welfare of a child. The defendant appeals.
The defendant concedes that his challenge to the legal sufficiency of the evidence on the basis that he proved the affirmative defense of duress by a preponderance of the evidence is unpreserved for appellate review (see CPL 470.05[2]). In any event, "[d]uress is an affirmative defense that does not negate any of the elements that the People are required to prove in the first instance, such as intent" (People v Horn, 186 AD3d 1117, 1118). Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt.
Moreover, to the extent the defendant contends that the verdict is against the weight of the evidence because he proved the affirmative defense of duress by a preponderance of the evidence, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). "The question of whether the defendant was acting under duress is primarily one of credibility, which is to be determined by the jury" (People v Devers, 82 AD3d 1261, 1262 [internal quotation marks omitted]; see People v McKinnon, 78 AD3d 864). Upon reviewing the record here, we are satisfied that the verdict of guilt, and the jury's rejection of the affirmative defense of duress, were not against the weight of the evidence (see People v Reyes, 144 AD3d 1178, 1179; People v Urbaez, 219 AD2d 568, 568).
The defendant's contention that the Supreme Court erred in permitting the People to introduce into evidence a bottle of flammable liquid found in a red bag the defendant was seen carrying into the house is without merit. Where "the defendant raise[s] the affirmative defense of duress, the People [are] . . . permitted to rebut his defense with evidence of . . . inconsistent intent" (People v Maldonado, 5 AD3d 505, 506). Here, the defendant contended that he acted under duress because the other home invasion participant threatened his life as they entered the house. In light of that claim, the People were properly permitted to rebut the defense with the bottle, where testimony demonstrated that the red bag in which the bottle was found did not belong to the victims and that only the defendant was seen carrying that bag, despite his testimony denying that he carried such a bag into the house (see People v Bruce, 130 AD3d 938, 938).
The Supreme Court did not improvidently exercise its discretion by admitting into evidence photographs of the fatal self-inflicted gunshot wound to the head of the other participant in the home invasion, nor was the defendant deprived of his right to a fair trial by this ruling. During trial, since the defense suggested that the other participant did not commit suicide, the photographs were relevant to collaborate the testimony of the medical examiner witnesses that the other participant died by suicide (see People v Rivera, 74 AD3d 993, 994; People v Prowse, 60 AD3d 703, 704). Further, the photographs were used by the prosecution to rebut the defendant's suggestion, in support of his defense of duress, that the crime scene had been staged by the police. As a result, since the "sole purpose" for offering the photographs was not to arouse the emotions of the jury or to prejudice the defendant, the photographs were properly admitted (People v Wood, 79 NY2d 958, 960 [internal quotation marks omitted]; see People v McClinton, 180 AD3d 712, 715). Moreover, the photographs were not excessively gruesome, as they only showed a limited portion of the other participant's body (see People v McClinton, 180 AD3d at 715; People v Anglin, 178 AD3d 839, 840) and were accompanied by curative instructions to the jury during trial and before deliberations as to the purpose of the photographs and to not dwell upon them (see e.g. People v Williams, 168 AD3d 770, 771).
Contrary to the defendant's contention, defense counsel's failure to object to the Supreme Court's decision to not provide a written copy of the jury instructions to the jury upon its request did not constitute ineffective assistance of counsel. To prevail on a claim of ineffective [*3]assistance of counsel under the federal constitution, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" (Strickland v Washington, 466 US 668, 688) and "that the deficient performance prejudiced the defense" (id. at 687). "The first prong of the Strickland test is essentially a restatement of attorney competence, which requires a showing that counsel's representation fell below an objective standard of reasonableness. The second prong, also known as the prejudice prong, focuses on whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (People v Pagan, 155 AD3d 779, 781 [citation and internal quotation marks omitted]; see People v McDonald, 1 NY3d 109, 113-114).
"In contrast, New York's constitutional requirement of effective assistance of counsel is met when the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Honghirun, 29 NY3d 284, 289 [internal quotation marks omitted]; see People v Baldi, 54 NY2d 137, 147). Under both the New York and federal standards, however, "a defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings" (People v Honghirun, 29 NY3d at 289 [internal quotation marks omitted]). Here, the record establishes that defense counsel's representation did not fall below an objective standard of reasonableness (see Strickland v Washington, 466 US at 687), and that defense counsel provided the defendant with meaningful representation (see People v Caban, 5 NY3d 143, 155; People v Benevento, 91 NY2d 708, 714). "'A defendant is not denied effective assistance of trial counsel merely because counsel does not make a[n] argument that has little or no chance of success'" (People v Bernardez, 85 AD3d 936, 937, quoting People v Stultz, 2 NY3d 277, 287). CPL 310.30 does not require the court to provide the jury with a written copy of the entire set of instructions. Instead, CPL 310.30 provides, in relevant part, "[w]ith the consent of the parties and upon the request of the jury for further instruction with respect to a statute, the court may also give to the jury copies of the text of any statute which, in its discretion, the court deems proper" (emphasis added). Further, the record does not demonstrate that the prosecution consented to the jury's request for a written copy of the instructions.
The sentence imposed was excessive to the extent indicated herein (see CPL 470.15[6][b]; People v Suitte, 90 AD2d 80).
The defendant's remaining contentions are unpreserved for appellate review, and we decline to reach them in the exercise of our interest of justice jurisdiction.
AUSTIN, J.P., HINDS-RADIX, BARROS and GENOVESI, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court